Mr. Stigmaier, you may proceed. Good morning, Justices of the Court. By way of introduction, I have the family and friends of Robert Mueller, who was the defendant in this particular case. Your Honor, as I have been a state's attorney for ten years, and then in three different counties, actually, in defense, and many, many years after that, and there's a growing trend in this country with regard to juvenile offenders. It's becoming more and more involved with children 10, 11, 13, 14, 15 years old. And we, as defense lawyers, prosecutors, and this Court, have been given different scenarios and different ways to interpret the law in this state. Our juvenile code, in my opinion, at this point in time, needs to be more clearly defined as it comes to the rights of children under 17 years of age. N. Ray Gault started all this when, in the Court, suggested that when obtaining admissions of guilt from children, the greatest care must be taken to assure that the admission was not the product of ignorance of rights or of adolescent fantasy, fright, or despair. Start with that. We go then to the juvenile court in the State of Illinois, and it provides that when we deal with juveniles and they've been arrested, taken into custody, what have you, that we have what they call a juvenile officer. That juvenile officer is what I'm here talking about. We have a perfect case, fact-wise, to look at the definition of a juvenile officer's job. What we have is, on this particular night, we had a 15-year-old boy taken into custody in the town of Duquoin, Illinois. I don't know if you folks have been there. I'm sure there's been some campaigning in Duquoin, but it's a relatively small town. And even smaller is the custodial interrogation room. Now, here's a 15-year-old boy. He's in this little meeting with all these officers. And the officers, who know everyone in the town, call this mother, perhaps, the unfortunate lady, to come with her and this 15-year-old boy. They have a grisly murder that they feel was perpetrated by a member of this particular gang, the P-Town Saints. Now, the juvenile officer in charge was an officer named Prince. Now, he is a member of Duquoin Police Department. The Duquoin city has a murder on their hands that's gotten statewide publicity. They need some images. Now, the juvenile officer's job is to protect the defendant's rights when the defendant is present without counsel. Define for me, what exactly is his duty and responsibility? What does he actually do to protect the rights of a 15-year-old boy who's just graduated from grade school, who's brought up by a single mother, who is sobbing and crying in this interrogation room? Now... Mr. Stegmaier, before you go any further, it's my understanding you want this court to review the denial of the motion to suppress. Right. That's right. And that there was an agreement made between you and the state that there would be a stipulated bench trial, and the whole purpose of that would be to allow this court to review the facts that you're talking about. That's correct. But at the time you went before Judge Aguirre, Judge Aguirre didn't afford you a stipulated bench trial. Is that true? In other words, you said, I'm not going to do that. I'm going to treat this as a Rule 402 proceeding. We had several lengthy discussions about how we could proceed procedurally so that we would not waive the confession issue. And we went back and forth, and Judge Aguirre, as the court knows, was a former assistant state attorney. As a matter of fact, I served with him. And he felt that the way to preserve this issue was to treat it more like a plea of guilty than a stipulated bench trial, so that we would have a balance between those two. But if a Rule 402 proceeding waives all the issues, then you wouldn't be allowed to raise this issue before the appellate court. That's right. So I'm assuming that you filed a motion to withdraw the plea of guilty. Right. Was that opposed by the state? Not whatsoever. And yet Judge Aguirre would not allow the withdrawal? That's correct. That's exactly correct. So if we assume hypothetically that in order for you to raise this issue in a complete contract that you made with the state, you have to raise the issue. Right. That the only way to do that is to not make this a 402 proceeding. Right. Would you then be asking us to reverse this denial of the motion to withdraw the guilty plea? Yes. Okay. Short of that, you believe this issue that you're arguing is right at this time, procedurally? Procedurally, I believe it is right. I believe that we entered, and this is very unusual, and I've probably never run into it before. The state, and even in the brief by the state, they've agreed that we should be allowed to continue. Because, Your Honor, this is a very pivotal point in juvenile law. And I see where the state has actually said a contract is a contract, but they don't address the issue of waiver sufficiently. I'll ask them about that. Thank you. Proceeding on. I'm sorry to interrupt. No, no, not at all, Your Honor. The state argues in their brief about whether or not a mother can waive the rights of her child. Obviously, under Illinois law, she can't. Then the question came up, even before we got to that point, the question came up, was there enough dialogue between the 15-year-old mother and the investigating officers to raise the question of whether, okay, maybe they should have a lawyer. But the point that I'm trying to make about the confession is, what was Officer Prince supposed to do? How does he protect the rights of the juvenile if he sits silent with the rest of his officers, allows Ms. Miller to continually question, do I need a lawyer, don't I need a lawyer, what do you think, what do you don't think? The question is whether, I mean, your issue on appeal is that the mother invoked the right to counsel. That's your issue, isn't it? Not whether the juvenile officer should have done that. Right. On the appeal, the question is, did she raise enough question to at least have the officers decide, you know, in such a serious case as this, we think we should have an attorney. No, she didn't use the exact words, I want an attorney, in quotes. But she did in her own limited way, Your Honor, because she's an uneducated person in the law, at least professed many, many times as the case got more and more serious that a lawyer should be present. Well, wasn't there, I mean, after these statements were made by the mother, tell me if I'm incorrect about this, but wasn't she then allowed some time to go talk to her son in private? And then when they came back, the mother said, I've told him to tell the truth. Your Honor, that's exactly, totally correct. Okay. The officers, what the officers did, in my opinion, is move away from the lawyer issue into more about the facts of the case, and if you tell us the truth, everything's going to go good for you. In other words, it was her against the decoying of the police department, and I guess what I'm saying, well, okay, let me make sure I understand, though. I mean, was it at the point that she brought up the issue about the lawyer that she was then allowed to go speak to her son? There was, Your Honor, a period of time on and off during this whole scenario when there was a break, and then he came back, another break. I can't be more precise about that timing as to whether she made many statements. I guess my point is this. I mean, if the mother makes statements about maybe we need a lawyer or whatever, then they say, we'll allow you to talk to your son. I don't know exactly how that happened. But she goes and talks to her son. She comes back. When she comes back, she doesn't say, we want a lawyer. She says, I told him to tell the truth. So at that point, isn't it reasonable for the police officers to believe that they are not invoking the right to counsel, either of them? I mean, either the defendant on his own behalf or the mother on his behalf. Nobody's invoking the right to counsel at that point. If, in fact, the mother completely understood the Miranda rights, the right to counsel, the right, even after statements have begun to retract, if she had all that legal knowledge, I would agree with you. But if you take a farm lady who's sitting with her 15-year-old son in the De Quine Police Department facing murder, I don't know whether she had that ability to even make those decisions. Because it's a very, very – that's the core of this whole problem, in my opinion. Time and time again, this happens. And the juveniles with the parents going back to entering adult, the greatest care must be taken to ensure that admission was not the product of ignorance of rights and our adolescent's fancy of privacy. In this case, was the mother present when the defendant was read his rights under Miranda? To my knowledge, was not. And I believe the Gallup case stands for that proposition, ignorance of rights.  We define in the juvenile code what Officer Prince must do. A, must admonish the child of his constitutional rights, the Miranda rights. And that, Your Honor, is basically my position at this point in time. I don't believe that – I believe that entering adult protects families and children who are there without legal counsel. Thank you. Any questions? Ms. Shanahan. Let me ambush you on this before you start. Do you believe that this case is ripe for arguing the motion to suppress at this point in time? I don't know. I recognized the problem in this case when I first began reading it, researching it. I mean, I think the brief is very forthright in that it acknowledges that there is an issue here because it was taken in the format of a plea. The plea weighs all the defects of what would have been a trial. And yet then the state says a contract is a contract, you know, so let's go on. But I'm not sure procedurally that this is right. I'm not sure either, Your Honor. Quite honestly, I think I'm just trying to give – I'm trying to give the defendant the benefit of the bargain, just as the defendant was given the benefit of the bargain in Woodfield. The state has given the benefit of the bargain in Evans and Linder. I don't know. I mean, certainly – If the trial court was reversed and the order to withdraw the guilty plea was allowed, then a stipulated bench trial could occur, correct? At which point you would be back here, but you would have preserved the issue then. Do you agree with that or disagree? Let me just ask a question. I mean, you know, and I agree. I think your brief was very forthright and raised the issue and discussed it. But I read your brief to be saying we, the state, could assert waiver, but we're not going to. You know, and so isn't that where we are? Essentially, I would agree with that, primarily because this issue is going to come before this court. Judicial expediency and the case law developed in this state and by the – I mean, the United States Supreme Court that says – that applies contract principles to guilty pleas. It seems to me that because everybody – I mean, this wasn't anything that could be disputed, and at least the prosecutor, the defense counsel, the court, they all believed that what they were doing was allowing the defendant to preserve this issue. Certainly, if that didn't happen, then we're going to be back here on post-conviction review for the same issue. Quite honestly, I recognize the problem. I don't know the answer. I have said that this seems fair. In my first semester of law school, my professor told me you never say fair. Well, you're saying, you know, on behalf of the state, we're not going to assert waiver, and we want you to go ahead and address the issues, and that's what you're asking us to do. That's right. I mean, I think – And unless we just wanted to sua sponte say, you know – I think you're going to be expanding the law. It's not 402, then. It's a stipulated bench trial. That's what they wanted, was a stipulated bench trial. What they got was a 402 guilty plea. Are you aware of any case law that would allow you – That's the problem. Yes, that's the problem. Thank you. I'm sorry. Are you aware of any law that would allow you to waive these jurisdictional defects? I mean, the Supreme Court talks about these as jurisdictional or non-jurisdictional defects. Guilty plea waives all non-jurisdictional defects or defenses. Are you aware of any law that allows the state to waive that, as your brief suggests? Or are we going to expand the law? I think what I have just suggested will expand the law. As I say, the way it stands right now, the defendant can't appeal. He's just done it. Did the defendant in this case say, I plead guilty? By the way, I did want to ask – During the proceeding, did the defendant say, I plead guilty or I am guilty? I can – I'm just asking. You asked whether his mother was with him when he was read the Miranda rights issues. That's in the transcript that is part of the record on the field. I have a sticker here that says State's Exhibit A. That's on page 4. So she was waiting for the moment they brought him in. I don't know the answer to the problem that we have here. Quite honestly, as I say, I am just – the state's just trying to – I do believe that the defendant made a contract with the state that we'll stipulate the facts and we'll preserve this issue. But it didn't get done as a stipulated bench trial. It got done as a guilty plea. And if we want – if this court chooses to apply contract principles, I thought it was kind of interesting. Counsel in the case prior to this said, oh, I have another contract case. And I thought, well, that's cool. I have a criminal contract case. But I don't really know what the answer is. Either this issue can't be raised because it was a guilty plea and it's going to go back and it's going to come back on a post-conviction petition or this court can apply contract principles and go ahead and address the underlying issues, which leads me to whether a mother can invoke – can and did invoke Robby's right to counsel. The First District of Illinois has said that certainly no one else can invoke an adult's rights. And citing to Moran v. Perveen, which was the United States Supreme Court decision that held that the privilege against self-incrimination is a personal one that can only be invoked by the individual whose testimony is being impelled, Young went on to consider the question of whether parents can invoke the rights of counsel for their minor children and concluded that the parent cannot. We're not bound by People v. Young, are we? Pardon? Well, it's the only Illinois case on point. The Supreme Court has repeatedly said one district. The appellate court is not bound by the decisions of another district. The Illinois Supreme Court has not addressed this issue. No, it has not. And the U.S. Supreme Court has not addressed this issue. So that's the question. The Young court is quite thorough and discussed an Oregon case, a Wisconsin case, a Connecticut case, an Arkansas case, a New York case, went through them all and ultimately concluded that there was no compelling reason why the general rule that a suspect must invoke the right to counsel himself should not apply to minors. Although there is a citation to an Idaho case that concludes differently, I noted in my brief that only in the absence of Illinois authority would this court look to Idaho. I always get those two confused. But so is this court bound by Young? No. But if you're saying since we have Illinois law on this issue, then it can't look to the Idaho cases. So I think to that extent. So I think the first thing is that she can't invoke his right. All he had to do was say I'm on a lawyer, and he could have done so. And he didn't. She can't. So on that issue, it wouldn't matter how clear and unequivocal her invocation of the right is. She never even said the word attorney, lawyer, anything like that. You couldn't even in your wildest dreams say that Robbie asked for a lawyer. If we're going to deal with anybody, we're going to deal with this mother. That's my first argument is that she can't invoke his rights to counsel. Even if she theoretically can, she didn't. As the Illinois Supreme Court has noted in Peeble v. Kruger, not every reference to an attorney should constitute an invocation of the right to counsel. The United States Supreme Court in Davis noted that invocation of the right to counsel minimally requires a statement that can reasonably be construed to be an expression of a desire for the assistance of counsel. And if a defendant makes a reference to an attorney that is ambiguous or equivocal, such that a reasonable officer, in light of the circumstances, would have understood only that the suspect might be invoking the right to counsel, the United States Supreme Court says that you do not need to cease questioning. The request has to be clear enough that a reasonable officer would understand the statement to be a request. And this standard applies to juveniles as well as adults. So as I noted in my brief, I think the way to analyze this case is if we take Rhonda's questions and have them coming out of Robbie's mouth, would they be sufficient to be an unequivocal request for an attorney? The first one is just absolutely, no doubt. Do we need to get an attorney? That is not a request for an attorney. It's not unambiguous. It's not unequivocal. The Illinois Supreme Court in Christopher K. had a virtually identical question, do I need a lawyer? And the Supreme Court said that this was raised as a request for advice, not an assertion of a desire to obtain a counsel.  The question in Christopher K. for the Illinois Supreme Court, do I need a lawyer? They're identical. And so there's no question that statement was not a request. The second statement was apparently there's something here, so apparently he does need an attorney, because if what I'm getting from you is what I think I'm getting from you, then I would say a 15-year-old boy needs to be sitting with an attorney. After she said that, police said if that's what you want, that's your decision. And Rhonda said, well? Let me just ask you about that. Mr. Stigmeyer says that it then became the duty of that officer to go further on behalf of the child and get a lawyer for that child. Well, first of all, I think a juvenile officer's duties when the child's mother is sitting right there next to him are subservient to her. And second of all, he said that he didn't consider it a request for an attorney. I'm sorry, he didn't what? He didn't consider it to be a request for an attorney. Is she saying I think we ought to have a lawyer sitting here? Yes. She did not say that. The case law basically comes down to saying I want a lawyer is what is required to get a lawyer. And I think it's important that if she says, well, I didn't, they say if that's what you want, that's your decision. And she says, well, I didn't think it was to begin with, but as we sit here and talk, then everything just kind of trails off. So the tenor of this is I didn't think we needed an attorney, but maybe we do. Maybe we do, maybe we don't. Maybe we do. What's the purpose of having a juvenile officer there then? I don't think it's particularly important in this case since his mother was there. I've seen a lot of cases, read a lot of transcripts where the parent's not there. And then I think the role of the juvenile officer is crucial. To say that Robbie's mother was not capable of understanding the Miranda rights and deciding, I mean, even assuming, which I think is a big assumption that she could invoke these Miranda rights, to say that she could not understand these when we have cases where a 17-year-old that dropped out of school when he was a freshman and has no education beyond that whatsoever, he can knowledgeably waive his Miranda rights. And certainly an adult with no disabilities whatsoever who's living on their own, raising their children, making a plethora of decisions on just running your own life can understand the Miranda rights. The recent decision in the United States Supreme Court of Berkhouse v. Hopkins says if an accused makes a statement concerning the right to counsel that is ambiguous or equivocal, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his Miranda rights. Now, Rhonda's language is vague and indecisive. As I said, she just kind of lets it taper off of, well, I didn't think it was what we wanted to begin with. But as we sit here and talk, and then she sort of just stops and peters out. I think the Illinois Supreme Court decision of People v. Kruger is very on point. Very similar statement where the defendant said, wait a minute, maybe I ought to have an attorney. You guys are trying to pin a murder rap on me, give me 20 to 40 years. And the Supreme Court said that you needed a more positive indication or manifestation of a desire for an attorney than what was made there. It's a very, very similar statement. Maybe I ought to have an attorney. And that's pretty much what Rhonda said. And there were other points noted in Kruger, such as the fact that the defendant was a person of normal intelligence, understood some Miranda rights, effectively waived those rights, the interrogation was short, there was no indication that the defendant was coerced. A statement very much like the one in question here. The Supreme Court said that's not a good enough request. Here, likewise, the defendant and his mother are both people of normal intelligence. No one has ever disputed, either in the trial court or on appeal, that he understood his Miranda rights or that he effectively waived them. The interview was fairly short. There was no coercion. Not only was the defendant's mother present, but Officer Prince, who was the juvenile officer, was present. And as I noted earlier, Officer Prince testified that if he felt the defendant's rights needed protection, he would step in. But he didn't feel that way, so he didn't. And the police officers all testified that they didn't believe this was an invocation of a right to an attorney. And as Kruger notes, that's not a controlling issue, but it is another factor to be considered by this court as to whether. And then the third mention of the attorney was even less important. It was after he had admitted that he was present at the murder, and Miranda said that if he confessed and got some kind of leniency, that an attorney could write it down. The police said, we can't promise you anything. And then, I think importantly, right after that, and before the defendant said another word, Miranda said to the defendant, you should tell the police what you know, which I think moves on to the last point, which is that even if she can invoke counsel, and even if she did invoke counsel, she relinquished it by her continued conversation with the police and the encouragement to the defendant to tell the truth. You mentioned one of the times when you were cross-examining counsel where she came in and she said, tell him the truth. When she made the first statement asking if he might need an attorney, the police officer said, that's your prerogative. And then before the police said anything else to the defendant, Miranda said that she would be beating Robbie's head off the wall, telling him he better be telling the truth. She asked for time to talk to her son. That was given to her. When they came back, she told the officers that she had told the defendant to be honest and tell the truth. And this was all on a videotape? Yes. Well, I know there's a transcript. It's not coming to mind immediately. It was recorded. Let me put it that way. It was recorded, yes. It was recorded. So she, even if you take this first statement and say, well, that's a request for an attorney, then when she then says to her son, tell me the truth. And I think we need to point out that even in the Idaho case, in Idaho, a parent can invoke his or her child's Miranda rights. But even then, the police don't have to stop talking to the parent. And so in all three of the instances which the defendant is arguing that were invocations of a right to counsel, the police continue talking to Rhonda. Rhonda's response was basically to then tell her son to tell the truth. And in the second statement where she said we might need an attorney, again, they said if she wanted an attorney, that was her decision. And Rhonda follows up this statement by asking the defendant questions himself. And then a little while later, Rhonda said you need to tell them the truth. If there's more to it, I pray they cut you a deal. Shortly thereafter, she told police that she had always told her kids to tell the truth and would knock the dog crap out of them if they don't. Then she says to her son, he was there? She's asking her son, so if there's any, if there is any invocation, there can be an invocation if there was an invocation, then the police were allowed to continue talking to Rhonda and Rhonda was allowed to relinquish any right that she might have. And she most certainly, most certainly did. If there are no other questions. No, thank you so much, Ms. Heumann. Mr. Stegmaier. As pointed out by Justice, 5th District does not have to follow 1st District. And the 5th District has always, in my opinion, after many, many years, has always taken the right road to correcting the injustice no matter what other districts saw. Have done, have ruled. And the old statement is, if it looks like a duck and it acts like a duck, it's a duck. Now, we talk about the Young case. In the Young case, the court said, as a matter of federal constitutional law, at least as to adults, The Moran case held that the privilege against self-incrimination is a personal one that can only be invoked by the individual whose testimony is being compelled, at least as to adults. What about children? What about children? Justice pointed out to us, again, here's Rhonda, and my brief was full of statements made by Rhonda. As far as I think I need a lawyer, I don't know why I'm a lawyer. And the juvenile officer who says, sat back to protect the constitutional rights of the 50-year-olds, Well, I didn't think that he needed a lawyer. Did you think that police officer, a member of the Duquoin Police Department, would have said, wait a minute, officers, he needs a lawyer. I guarantee you he wouldn't be at the next party to get him by the Duquoin Police Department. I'll guarantee you that. And so what I'm saying to you is, for all the juveniles that are going to come before this court, and there is no lawyer present, The juvenile officer has got to stand up and protect the rights. The constitutional right to Miranda is born in this country and belongs to this country, but it belongs to children as well as to adults. Do you expect a 15-year-old who just got out of junior high school to play long in a basketball team, and probably doesn't even know where the city of New York is, and doesn't even know where George Washington is, is supposed to know his constitutional rights? Forget it. There's no chance on earth. Do you think he's going to take some lady out in the country in Duquoin with a population of 5,000 and watch his daytime TV? He's going to understand Miranda rights? Forget it. It's not going to happen. But what does the juvenile code say? We have, quote, a juvenile officer whose rights are to protect the individual. How do you stand back and protect the individual when you don't even suggest to him, Oh, by the way, let us Congress, let you, mom and son, and me, the juvenile officer, get together and let me explain to you what the world of Miranda means. I think it's a shame that it's time we address this issue and that juvenile officers' duties are explained A, B, C, D. And by the way, when we talk about other states, there are some states that require 17-year-olds and under to have a lawyer, to have a lawyer. And the Supreme Court of the United States, I think, is right on the edge of making that a rule because of the way of juvenile offenders. They've got to have moral rights. They've got to protect the individual. They've got to understand Miranda. There are some cases where even the court, and even in DuPont, the judge sent the 15-year-old to school so he'd understand that he ran the rights. Judge Campanella, he actually, I was in that case, he sent the kid to school because he understood and read it all. And I know this court understands that as well. And I'm just going to finish by again suggesting to the court, the greatest care must be taken to ensure that the omission was not the product of ignorance of rights, adolescence, fantasy, or privacy. Thank you. Thank you, Mr. Stegner. We'll take the matter under advisement and we'll recess for lunch. All rise.